Good afternoon, your honors. Tristan Ellis from Cheney's Law Office for the appellate Mr. Ovilas. May it please the court, the City of New York unlawfully detained Mr. Ovilas for 17 days in a decrepit and dangerous Rikers Island Jail because the warrant on which it relied was never properly delivered and second, the parole warrant went stale in any event when the state failed to provide Mr. Ovilas with a plenary hearing within 15 days of executing the three day notice. That's right, your honor. You're relying on the 15 days. Correct, your honor. What is the period of time in which he was unlawfully detained? Was it the period after he was eligible, after he could have been released, having made bail until the final date of the release? That's right, your honor. He paid bail. 17 days. Correct. Um, and are you arguing that it's a separate Fourth Amendment issue that the warrant was not delivered pursuant to the terms of the statute? Or are these two parts of the same whole? Walk us through how those two interrelate. There are two separate arguments, your honor, because what provided, uh, the city or the city department of corrections with the legal authority to temporarily detain Mr. Ovilas pursuant to the parole warrant was the delivery requirement in section, uh, subsection three, a Roman numeral one of executive law 259. Delivery to whom? To the person in charge of the jail where the detainee is held. Well, it says that the person who receives the warrant is authorized to seize the person and confine him, right? That's right, your honor. The police officer would need the warrant in order to take him, take him under arrest. Correct. But you're saying that the superintendent of the prison or some official of the prison would need the warrant to, uh, to take him there. Correct, your honor. The government argues about, uh, you know, whether that's really true or it only needed to be delivered to the police and so on. But didn't the record or some testimony show that actually the warrant does like a copy of the warrant gets electronically transmitted to the prison? Your honor. Along with the file of the defendant. Your honor, there is no evidence in the record in this case that that actually happened. And the city concedes that point by arguing on pages 26 to 27 of its brief that delivery of the warrant to the New York City Police Department is all that the statute required. And as authority for that proposition, they rely on page 233 of the joint appendix, which is the testimony of senior parole officer Hogan, which obviously is not a definitive statement of what state law requires. But her understanding was that delivery of the warrant to the jail itself is what was required. So can you walk me through? Is it the plaintiff's argument that normally the warrant is delivered in electronic or physical copy, but that in Mr Viles's case, the warrant was never delivered? Or is it your argument that this never happens? The former, your honor. Okay, so that it's this case. In this case. But if you're suing the city of New York, don't you have to show that it was the action was taken pursuant to a policy of the city or at least a widespread custom? Yes, that's true, your honor. So all you've alleged is that actually in this particular case, they didn't have the warrant for this one defendant. You haven't shown that there's a widespread custom and you have more that there's a policy that the city has of detaining people without getting a copy of the your honor. I would point to the testimony of the city's 30 B six witness who testified about the usual protocol about how warrants are transmitted to the Department of Corrections at the local court where a Department of Corrections officer inputs the detainer hold into the Department of Corrections information inmate information system. And from that point on, the city relies on. Well, so now you're saying that there is a custom or a policy. So it's not just Mr. Uvila's case. You're saying that actually the city does this all the time and that's unlawful. So this process of transmitting the detainer hold electronically to the prison doesn't satisfy the statute. And that's what you're saying. Right, your honor. Let me let me back up. My argument is that I'm not arguing that the state as a matter of course, never follows this requirement. My argument is that the city's policy is to rely on these detainer holds that are entered into its inmate information system rather than relying on a copy of the parole warrant itself delivered to the facility where the detainee is held. It seems that what there are two different things going on in your record. One is that you pointed to the city docs manual that shows that normally someone in city docs in the office gets a warrant and enters an information into the warrant detainer screen on the inmate information system. But your argument in the record appears to reflect that that was never done for Mr. Uvila's. But then separately, you provide those same documents for the position that there's a policy that the city has of not letting someone go unless the state contacts the city with a parole warrant lift. Is that right? So maybe you show a question of fact on the mail on the second issue, but not on the first issue. Um, I take your point, Your Honor. And again, I would just point, Your Honor, is to pages 342 to 343 of the joint appendix, which is where the city's 30B6 witness testifies about how these parole warrants are entered into the DOC's system. But I think this is a good point to... Well, the statute says that the warrant shall constitute sufficient authority to the superintendent or other person in charge of any jail, penitentiary, lock-up or detention pen to whom it is delivered to hold in temporary detention the person named therein. So if the police get it and sort of transcribe the details into the detainer hold and transmit it to the prison, why shouldn't that be understood as delivery of the warrant? Well, Your Honor, the plain language requires delivery to the person in charge of the jail. And... No, I understand. But I'm saying this electronic transmission to the prison, I understand it's not the literal piece of paper that's the warrant, but it's all the information. Why isn't that the delivery to the superintendent? Your Honor, the delivery requirement in the statute isn't meaningless in the sense that the warrant, possession of the warrant itself is what provides the person in charge of the jail with assurance that they are actually... But neither one person has to have a copy of it, right? So it can't be that it's the literal one piece of paper, right? Like if I make a Xerox copy of the warrant and I give one to the police officer who makes the arrest, then I make another copy to the superintendent of the jail. Would you argue that that would still not be sufficient under the statute? We wouldn't make that argument, but it's... Right, so a Xerox copy would be sufficient. So if that's true, then why isn't the electronic transmission of the information in the detainer hold sufficient? Because the information in the detainer hold doesn't...is subject to human error, doesn't provide the same... So the information in the detainer hold is simply there is a warrant for this person, period, or is it without specifying what's in the warrant? That's right, Your Honor. It just...it provides that there is a detainer hold by docs. And also the parole warrant, which is... That's right, Your Honor. And the warrant itself actually also contains the name of the person who issued the parole warrant, in this case, Senior Parole Officer Scanlon. So should the person in such as, did this parolee waive their preliminary hearing, the warrant itself provides a point of contact for the jailer to contact docs and ask those sorts of questions. And if I may briefly touch on... Yeah, that's fine. So I ask that your other argument about whether the warrant became facially invalid upon the failure to provide the hearing. So there are state regulations that say, you know, any parole officer, officer authorized to serve a criminal process or any peace officer can issue a warrant, but only a member of the Board of Parole or a judge can vacate one, right? Yes, Your Honor. So doesn't that mean that the warrant is in existence and is an authorization for detaining somebody until a judge or a member of the Board of Parole vacates it? It means that the warrant still exists, Your Honor, but it doesn't speak to the continued validity of a parole warrant. And as this Court made clear in McDay v. Travis... So wait a second, you're saying that the warrant becomes facially invalid and it's actually kind of a useless piece of paper, but we still have a state regulation that says that only certain people can vacate it. What's the point of vacating it if we can just look at the thing and say that it's meaningless at this point? So there may be a number of reasons why the parole warrant might be vacated that are separate and the state's failure to provide a timely preliminary hearing, such as in this case, there was a non-curable service defect, which is why the state sought to vacate the parole warrant. It just didn't happen in a timely manner. So that regulation isn't meaningless. And as this Court made clear in McDay v. Travis, when the state fails to provide a timely preliminary hearing, the parole warrant becomes a nullity, which is a correct statement of... No, but it doesn't actually say that. So the summary order says it appears, even though we don't have a copy of the warrant, that it becomes facially invalid at the failure to provide the hearing. But then, you know, the District Court here says, well, we have New York State case law that tells us that actually it doesn't become facially invalid because you can bring a habeas challenge and then there's an evaluation about whether predicates are met and so on. And so, you know, while it could be voided, you know, in compliance with the law, it doesn't, you know, it doesn't turn into a nullity. Right. That's right, Your Honor, that's what the District Court... And I understand there's a dispute over, you know, how binding are summary orders and so on. But even if it's a published opinion, if it's opined to the question of state law, that's just a prediction about what the state courts would do. Right. So after we issue an opinion about what we think state law requires, if the state courts tell us this is what it requires, that's the thing we're supposed to look to, right? That's right, Your Honor. But here, the District Court relied on a single decision, Gonzalez v. State, which is not a decision by the New York Code of Appeals. It is a single decision that no New York court has cited, no federal court has cited except for the District Court in this case. And as the city... And it's not a Fourth Amendment case, right? It's a false imprisonment claim, a stat that we're just opining on one element of that claim, but not actually assessing the reasonableness of a detention based on a parole warrant that's become invalid or somehow doesn't comply with the timing requirements required by the statute. That's exactly right, Your Honor. And Gonzalez is also distinguishable because in Gonzalez's case, Mr. Gonzalez, Gonzalez's attorney consented to the two-day adjournment from his, of his preliminary hearing. So those are the facts of it, but the State Court does say that as long as the warrant has not been vacated, the detention is privileged, right? No, Your Honor. I don't think the State Court decision actually goes that far. And I, we argue that the reasoning of Gonzalez, which is a single three-sentence paragraph towards the end of the opinion, is too perfunctory and muddled to make heads or tails of it. And it rejects the false imprisonment claim because the confinement was privileged, right? Right. It was arrested for suitably valid parole warrant, and the short delay in holding the preliminary hearing was not due to misconduct. I understand there's a dispute about misconduct, but as long as there is this outstanding warrant, it says the confinement was privileged, right? Well, it says, yeah. And we don't just rely on Gonzalez because now we also have the State regulations. I don't know why that wasn't before the District Court, but if I have a State regulation that says only a member of the parole board or a court can vacate the warrant, and I have a State Court decision that says as long as the warrant is issued, it hasn't been rescinded, the confinement is privileged, can I put those things together and say, okay, this is the way it's treated in New York State law, that is, until it's vacated by the appropriate authorities, the city has to confine the person? And then if we add to that the principle, which I don't think you would dispute, that when you're being held pursuant to a parole warrant, you might be in the physical custody of the city, but you're in the legal custody of the State, right? The city is just acting on behalf of the State. It's been ordered by the State to detain the person. I would disagree, Your Honor, because there is no law that required the State, the City, to continue to detain Mr. Ravillas after the State failed to provide him a preliminary hearing, essentially making or facilitating the State's violation of Mr. Ravillas' due process rights, because there's no question under State law, as the New York Court of Appeals held in Matthews New York Division of Parole, that the failure to provide a preliminary hearing within the time frame set forth in New York Executive Lodge 59-I is a possibility. I mean, the warrant itself says, I hereby order that said person be retaken and placed in detention to await the action of the New York State Department of Corrections and Community Supervision or a court of competent jurisdiction. And for so doing, there shall be your sufficient warrant. So it is literally the order to the City to detain the person, isn't it? The action of the New York State Department of Corrections and Community Supervision. In response to that, Your Honor, I would point to the language of the statute, which specifically provides that the detention is only, can only be temporary. So to say that the State, the City was obligated to indefinitely detain Mr. Ravillas until the State acted. Because he's in the custody of the State or the legal custody of the State, that if he's being held beyond the temporary period, isn't that a violation by the State? I mean, there's no question. I mean, the district court even said you could bring a habeas action. Like there's no, like you can seek redress to get him released if he's being held, but the redress goes against the State. Right. Well, Your Honor, habeas action explicitly under New York law is available only to persons who are illegally detained. And here the City conceded below by arguing that Mr. Ravillas should have mitigated his petitioning for a writ of habeas corpus, which is on pages 14 to 15 of their opposition brief, ECF number 65, that Mr. Ravillas would have been entitled to a writ. Therefore, his detention was necessarily unlawful. And your argument here is that this circumstance, which is deeply troubling, is analogous to what happened in Hernandez, where the circuit analyzed the Fourth Amendment claim, looking at the reasonableness of the detention, and basically said the City should have asked more questions given the factual record, and that those same questions should have been asked here. That's exactly right, Your Honor. To the extent that this Court doesn't want to impose some sort of affirmative duty on the City in every case to ask questions, you know, despite its current policy of detain first and ask questions never, like in Hernandez, the City here had actual notice of the failure of the State to provide a timely preliminary hearing, and had strong indication that he had not waived his right to remain and should have asked questions. And I have a question about the Monell decision that the Court made. It looked like Judge Kogan really focused on the custom theory that you may have pled below, but did not acknowledge the final act of a policymaker theory. Can you walk me through whether there are questions of fact in the record as to that second Monell theory that he did not address? Yes, Your Honor. So in our view, there is no real factual dispute because the City's 30B6 witness testified repeatedly that it will release parolees subject to parole warrants only under two circumstances, when the State tells it to release the parolee or if a Court orders it to release the parolee. And that's testimony by the City itself because it's a 30B6 witness. And then again, we have the Department of Corrections General Office Manual and the Department of Corrections Operations Order, which say the same exact thing. So it's our position that we're in, you know, of the three ways one can show a Monell claim, official policy, widespread violations, or deliberate indifference, we're firmly in the first bucket here. That it's an official policy? Yes, Your Honor. But it's not actually laid out somewhere, but it does seem like it's what they do, right? You can't point to a document. Well, I can point to, Your Honor, is to the Department of Corrections General Office Manual as well as the Department of Corrections Operation Directive or Operation Order. Right, so like appendix 426 in that document there, it basically has the whole section on parole warrantless, saying that that's how this warrant, according to the City, would ever be lifted. Exactly, Your Honor. And the directive talks about a court order, so between the two, you have the City policy. That's right, Your Honor. And who's the final policymaker here? Would that be the Commissioner of DOTS, New York City DOTS? Yes, Your Honor. Okay. Okay, Mr. Ellis, we do have two minutes for rebuttal, so we'll hear from you again. Let's hear from the City. Ms. Drucker. Thank you, Your Honors. May it please the Court, Alina Drucker, on behalf of the City of New York. I guess taking arguments in turn, I'd like to address the delivery argument first. That is really an argument that's been crystallized on appeal and was really a minor feature, if really even litigated strongly below. The result is really that you haven't, the record that is submitted on summary judgment doesn't speak with, I think, as much information, but there's as much clarity as it could. But I think it's pretty clear, first of all, that the executive law does not anywhere require, I mean, there's not a single case that says that there needs to be a physical delivery of a warrant. Do we need a case where we have the text of the statute which says very clearly that the warrant needs to be delivered to the person who's in charge of the jail? So the warrant needs to be delivered to the person, but it has to be interpreted, right? I mean, it doesn't say, the premise wouldn't be that as soon as the sheriff goes home for the evening. The warrant issued pursuant to this section shall constitute sufficient authority to the superintendent or other person in charge of any jail to whom it is delivered to hold in temporary detention. I don't really want to focus on this issue because I think that there's a Manel question here. It's not clear that there's a Manel question here. I'm more concerned about the fact that your brief doesn't address the non-custom theory of Manel liability here, which the plaintiff said pled, in which your adversary has pointed out there are facts in the record that call into question whether there's a Manel policy here of the city not ever releasing someone when they're held pursuant to a parole warrant that has become unlawful or invalidated under the precedents that the Second Circuit cited in midday, so Travis and Dalsheim, which remain good law. So I think that there's a, to step back a little bit, and I promise I'll walk back to the policy or custom, I think there's a misunderstanding about the nature of state law on this point. The more it doesn't become void, it doesn't become invalid. There is a point at which it becomes invalid, and this is before the reforms, because there's bail reforms, so now this is not really a live question about New York law. I'm looking at the text of the Travis decision, which is a New York case, New York-Nassau Superior Court, and it says, without question, denial of a prompt preliminary hearing entitles release. It entitles the person to release, but it doesn't entitle New York City to release the person. The point is that there is a warrant, and that warrant is served on the city. We don't have legal custody of this person. We have physical custody of this person. Right, and so that goes to the Manel question. This is about the substance of the right. This is about whether or not this detention is unreasonable under the Fourth Amendment, because under New York State law, without question, the denial of a prompt preliminary hearing entitles a person to release. But that means they have to establish, in a habeas proceeding or by having the Board of Parole agree with them, that they haven't had that hearing. Why does it require a habeas proceeding? Well, because New York City is not a state. If you ever complied with the law, that's it. I mean, you know, you're saying, well, it has to be enforced in a specific way, but without a habeas proceeding, somebody could comply with the law. In fact, that's what was sought here. As soon as this person who had responsibility to the warrant realized what had happened, she turned it around. She happened to be on vacation. She would have done it right away. That's with respect to the preliminary hearing. But this assumes she may have known when this warrant was executed because she worked for the state. But the city has no way to know when the warrant is executed. The city has no way to know whether or not Mr. Uvele has communicated to the State Parole Board that he wanted to waive his hearing. I have said that, you know, one thing about a habeas petition is that it allows for relief against the state. And your position is that the city can't release the person because the person is in the custody of the state. And the reason why you get relief through a habeas petition is that a state court can provide relief against the state, but the city would have no discretion to violate state law by releasing. That's exactly right. The city has no way to know that the conditions under which a factual determination can be made by a habeas court are met. When was the warrant executed? As opposed to when it was lodged or issued or recorded in our paperwork, when was it executed? We don't have any way to know. The issue of good faith, and right, in the Second Circuit's decision in Hernandez, it said pretty clearly, like, a good faith exception, you know, maybe the officials at New York City Dock, the individual people in the office looking at the inmate information system may not know all of the facts, but here the issue is the city's policy. And there's a question of fact as to whether the city has a policy of never asking questions in circumstances such as those bringing to the city of L.A. There's nowhere in this complaint that even comes close to that. We're talking about, and if you credit everything, what we're saying here is that on day 15 after he posted bail, two days before he was released, what happened? If the city had then called. I'm sorry, he posted bail 17 days before he was released. Right, and so 15 days later, assuming that the warrant was executed when it was the sole basis for his detention, 15 days later was two days before he was released. So 15 days later, someone at Dock, if you're, the theory being it would be unreasonable at that point not to inquire. At that point, there had already been a submission at the State to the Board asking the Board for the State parole to vacate him. Right, and Dock heard from Mr. Uvellis' friends and family and Mr. Uvellis himself. And decided to just release him even though the Board had not yet authorized it, even though that question had been specifically put to the State Board at that point. Right? The record is clear that by that point, the State Board had already had a submission placed to it by his parole officer asking for the warrant to be vacated. And that was pending at that point. So what the city's policy at that point could be is communicating with the State Board, confirming that that State Board is currently considering revoking that warrant. You actually don't deny that you have a policy in some sense of not releasing somebody who's being held on a parole warrant until the State vacates the parole warrant, right? You're saying it's not a policy of the City because it's required by State law, so it's not attributable to the City. But you don't deny that that is in fact what the City does. Yeah, that's right. I mean, I think it basically eliminates a Monell claim in seven different ways, right? I mean, we don't have a facially unconstitutional policy. We have a policy of following State law to the extent that's even a cognizable policy under Monell, which I think there's pretty clear case law it isn't. Even if we say that's the policy, that policy is facially lawful. When you have a facially lawful policy, it needs to be... The District Court, which apparently didn't have the regulations before it, so maybe this was an incomplete analysis. The District Court thought you did have discretion to adopt a different policy, right? Right, and I think that the District Court was slightly confused because of some misunderstanding from the McDay case from this Court, which at the time was predicting how New York courts would respond in this situation and didn't have the benefit of the Gonzalez decision. And that decision suggested that somehow there was a policy, that we had some policy discretion there, but we don't. I mean, the discretion, the State law is very clear that the State has legal custody, we have physical custody, we take someone into custody based on a warrant, the warrant is delivered to the City, the person is placed into a holding pen at NYPD, it is then lodged with the Court, it is logged in the computer system. All of the information from the warrant is typed up. It's on 402 of the record. The picture of the computer printout from Dock, it has the name of the number of the warrant, the date that it's logged into the system, the date that it, and then that... So just to make a small point before we get back to this, so even if we were to think that under the State law you need the warrant to be delivered to the superintendent in order to detain the person, since you've just said that all of the details of the warrant, it's in the record that all the details of the warrant get transmitted electronically to the prison, would that meet the requirement? Of course. The point is that New York City, this is a law that applies statewide across the State, and in many jurisdictions in the State, the warrant is delivered to the sheriff, the sheriff puts the person in their holding pen, the person is in the holding pen until parole is revoked and they are transferred to the State. The fact that New York City is a massive scale, it has sub-agencies handling different parts of the criminal justice system, is an expediency for the City. It's not something that needs to be accounted for in State law by requiring re-delivery each time someone is transferred among the massive number of agencies within the City. For the same reason you wouldn't have to re-deliver if the sheriff retires or goes home for the night, you don't have to re-deliver the warrant to the next sheriff in a small town upstate to justify that person continuing to hold the person. It's not the person, it's the local government, which has no control over the parole system, is told, please detain this person, in fact you must detain this person, it says it on the face of the warrant, it says it in the executive law, it says it in a whole host of New York Court of Appeals cases. But the rule actually just says, it authorizes it, but there is case law that says that the locality doesn't have the discretion not to detain a person. There's quite a lot of case law and recently in the Rikers Island cases, the trial courts in those cases are early on, trial courts have acknowledged the City has no ability to do anything with these people who are State parolees, that is something that we only have physical custody over, and then there are a series of New York Court of Appeals cases which were not mentioned in the McDay case from the summary order, but pre-existed that, which deal with disputes between local government and the State about our ability to transfer parolees into the State's custody, and all of those cases make clear too, the City has no opportunity or right under State law to engage in self-help and just release people. It follows what the State says, the State tells us everything to do with respect to parolees, and for that reason, there's not a Monell policy. If there were a Monell policy, it's a facially constitutional policy to follow the law, and when you have a facially constitutional policy, the only way that you can overcome that to bring this Fourth Amendment claim is to show deliberate indifference. And there's nothing that even comes close to making a deliberate indifference showing here. There – Do you dispute the 15-day requirement for a preliminary hearing? I'm not sure what you mean. I dispute that the law requires a preliminary hearing within 15 days. 15 days of what? 15 days of the execution of the parole warrant. Yeah, I'm looking at Section 259, little I, the section that we're all focusing on. So based on that, you don't dispute that a preliminary hearing is required within 15 days, right? Well, the State has to either hold a hearing or obtain a waiver within 15 days of its execution of that warrant. Tell me something. So – Go ahead. Go ahead. No, no. Finish. So according to the City's policy, the State could have bureaucratic errors that lead to someone being held on a parole warrant for two years, and your position is that the City has no responsibility to ask questions and figure out whether this person is unlawfully detained. No, absolutely not. There's just no – Okay, so walk me through where you think the line is. Where is the line when the City needs to ask questions about why someone didn't get a preliminary hearing within the statutorily required timeframe? Sure. We can walk back from the very outer limits or the constitutional limits. So under Calhoun, the U.S. Supreme Court has made clear that the maximum sentence on that parole, on the underlying charge, is the outer limit. But under New York law, it's very clear – So it's constitutionally sufficient for you under the Fourth Amendment if this person was held the maximum amount of time he could have conceded a waiver. Absolutely not. Can I finish, please? Even though he was – his charges were dismissed, right? And no subsequent parole violation warrant was issued after this one became void. I'm sorry. I was trying to walk back. So I was saying the very outer limit is the constitutional limit. But State law provides a series of other limits, the most obvious one being that 90 days from the execution of a parole warrant, there is – has to be a revocation decision. And at that, that one has been held by the New York Court of Appeals to be an outer limit, at which point the warrant is no longer valid. Right. And that's Dalsheim, right? And the language in Dalsheim is also shall, and the statutory – statute here also uses the word shall for the 15-day requirement. So why isn't the 15-day requirement just as stringent as the 90-day requirement? Because with the 15-day requirement, the consequence generally is someone can file a habeas petition, and they can be released by court order. Or when they ultimately – and what generally happens, because this moves so quickly, they get their parole revocation, they challenge at revocation the procedures, and ultimately their parole isn't revoked. According to you, the law can only be enforced through habeas, and you're relying on Gonzales for that proposition. Is that right? No. According to me, the – there is not an right from the city to unilaterally declare a warrant. Well, the state regulation says that a parole warrant can be voided either by the Board of Parole or by a court, which would be in habeas. And so your position is what the state law says, which is that the parole warrant can only be voided by the Board of Parole or by a state court acting in habeas or some other way. That's right. And until then, there is a standing order from the state to the city to detain the person. That's right. And to the question about, you know, whether we're deliberately indifferent to some – like, I mean, the question that you've posed to me, Your Honor, suggests that there's this flagrant left and right overholding and overdetention, and in which case it would be incumbent about – on local jurisdictions to think closely about the situation. But that's just not what the case here is. If there was a situation where actually it became – there was reason for thinking that the state was just not paying attention to whether people were being held pursuant to parole warrants even after they failed to get the sentence and so on, like they're being held for two years or whatever, and the city never inquired as to whether maybe the state was not, you know, meeting its responsibilities, then maybe, you know, you could show you have a deliberate indifference. Even though the policies required by the state, you know, you still would be – in this case, you knew that there was the paperwork before the Board of Parole, right? That's right. I think that that's really the objection to, oh, the city's not doing enough, implies that there is some reason to believe that the system has been – I mean, ever, other than in this case, not allowing – this case and Gonzalez are the only two that suggest that as of 2018, when Mr. Villes was incarcerated, that there was ever this sort of an over-detention issue, and it seems like it's – There's no right to counsel in parole revocation hearings, right? So most people aren't counseled when they're in this situation, and so bringing a lawsuit such as a habeas case or a civil rights action while incarcerated in this way would be very difficult, wouldn't it? Well, I believe people have counsel, and first of all, now they do because of the bail reform statute. But we're talking about 2018, right? But this person wasn't counseled at the time. He may have been counseled on the criminal charges, which were dismissed, but he did not have counsel to challenge his parole revocation warrant. Is that right? I guess as a function of the fact that as the city, I have very little experience with parole, I will say the habeas petition – the habeas cases that I reviewed suggest that these are actually pretty common. I mean, people do file habeas petitions, but I assume that you're right, that they don't necessarily – I think there was an indication in the record that his attorney was trying to get him released. Yeah, absolutely. Yeah, it was his – He had a hearing. It was correct. And that's why, you know, the parole officer was being contacted. And maybe that's why Mr. Uviles was able to bring a lawsuit of this kind, but not necessarily explaining why you're not getting an avalanche of lawsuits from other individuals, right? Well, he – Well, I don't know. Can I ask a question? It's very speculative. I'm not sure I can attribute – Is there anything in the record that indicates that there is a large number of people who are sitting in New York City prisons on parole warrants who you just are not paying attention to because they're uncounseled? There's no record about that. In fact, I think the plaintiff never made – tried to make that record and never really pointed to anything other than the McDay case and the Gonzales case. Well, in 2021, the law was changed, so now a hearing is going to be within 24 hours. I believe that's in the introduction to the plaintiff's brief. That's exactly right. I mentioned it in my brief as well. But that, I think, doesn't speak to whether or not we had been deliberately indifferent in the past. And as for the evidence in the record that speaks to whether we had been deliberately indifferent of this, I think there's no evidence. And in fact, even in the McDay case from this court, on remand, the record became pretty clear that, in fact, Mr. McDay had not been over-detained and that that was – at that point, they were arguing about the legal consequences, but had assumed the facts. In fact, even the McDay case did not involve an over-detention. There's no record of some systematic failure by the state to engage in – to follow the state procedures. But do you need that? Like, isn't that a Monell custom question? And here, the theory that the district court didn't evaluate was that there's an official policy by a final policymaker for the city, as shown through the directive that your adversary pointed to and the New York City DoC General Manual. It's a different theory, right? Like, why does there need to be evidence of a custom here if there's an official policy and there are questions of fact about whether it's the moving force leading to the constitutional violation here, which is the Fourth Amendment violation? I think – I think maybe I'm misunderstanding your question. But what I'm saying is that there isn't a policy beyond whatever policy we can accept, which is that the city follows state law. And that policy, because it's facially lawful, would have to rise to the level of deliberate indifference to support a Fourth Amendment 1983 change. Well, I think there are a couple of steps. One is that the policy is facially lawful because it's compelled by state law or it follows state law. And so, therefore, the only way to show that it's unlawful is if you're expressing deliberate indifference to constitutional rights, which would emerge in the kind of scenario we're talking about, where, like, you have reason for thinking that following the state law actually resulted in a bunch of constitutional violations, as in the scenario where people were being held for years without having the warrants vacated. Or even very, very, very often for days. But none of that is here. And I think that's right. But even – even stepping back, the monoclonal – So it doesn't – so this – you don't actually dispute that you – like I said before, that you have a policy of not releasing somebody held on a parole warrant until the state vacates the parole warrant. I mean, I think – Your argument is that that is required by state law. I think my argument is that it's required by state law. And if there's some outer bounds under which that policy – you know, you take any policy to the – to the extreme. If you followed it and there was evidence of deliberate indifference, then even a facially lawful policy might be unconstitutional. But that's your argument. Facially lawfulness and no deliberate indifference. And I think even before you get there, that's an independent basis. So that's the – you know, Monell has multiple prongs. There's the policy prong and then policy or custom prong, right? And then there's also causation. And I think that there's a – there's also ample case law that show – that's found – that's sort of used these same kind of facts and thought about them through the causation element and said, well, you can't attribute the constitutional violation. And here I think the evidence makes that pretty clear. The constitutional violation, to the extent there was one, is to the extent that Mr. Uveles was over-detained, it was attributable to an error on the part of the state. The city's – doesn't – is not – the It's not the but-for. The but-for cause is that his parole officer was on vacation. Well, that relies on the showing that you don't have discretion to have a different policy because it's required by the state. Right. I mean, his parole officer was trying actively to have his parole warrant lifted, knowing that that was the thing that would get him released. She'd been on vacation and maybe asleep at the wheel for a little bit. And so – but that's not something that would have been known or under the control of the city. All the city – and in fact, there's also testimony that when he – shortly after he posted bail, he asked the people when – at DOC, at Rikers, I thought I was supposed to be released. And they went back and checked. And there's testimony that they went and they checked their systems. They saw the parole warrant was still valid. Okay. I think we have an argument. I have one question. That is, when was the warrant executed? I don't know that because the warrant is executed by the state. But there's a moment of execution at some point, right? Aren't you arguing that the warrant isn't executed until – that's the only thing that's detaining him? So – Or is there a prior warrant? The warrant was originally executed, I believe, on May 23rd. That is, it was put into effect. So state court cases are a little bit unclear about this. But as – there's a footnote in our brief that tries to address that. There are cases that say that there's a difference between being lodged and being executed. So the warrant was lodged with the Department of Corrections on the May 23rd. It didn't come into effect or have any legal consequences until he was eligible for release. It didn't have any legal consequences, but the state board has the ability to execute a warrant whenever it wants. So the state may have decided – and it seems to me from the record that this parole officer at least thought that the warrant had been executed in whatever the state – however the state board calculates it, because that was why this parole officer thought – The execution of the parole warrant can't depend on something that the – subcharges the city's holding him on, right? No, absolutely. It's not in the officer's – We were given it when the city received – That's the triggering date for the time periods, right, 15 days to 90 days. Right. And that's part of what I was saying, that the city has no way of knowing when the I can say that the statute says 15 days from execution. I can tell you that the case law suggests that a warrant is executed not when it is – not when the person is initially arrested and not when it is lodged with the local jail, but when the parole board executes it. And I don't know when it's executed. The state knows that. That's why the state makes its calculations and that's why the state decides when it hasn't met its requirements, that it needs to request for the board or a court to lift it. And the – I mean, the state can make the board – make its board lift it. And that process took, it appears, several days once the parole officer at the state level decided to do it. But none of that is in the control or the knowledge of the city. Okay. Thank you very much, Ms. Drucker. We'll turn back to Mr. Ellis-Aguirre-Bow. Thank you. Your Honors, I guess I'll start with the execution of the warrant point, since that was the last topic that was discussed. Executive law 259-I, subsection 3A, Roman numeral 3, makes clear that a warrant is executed when it's the sole basis for detaining someone when the parolee is detained out of state. And that language would be entirely superfluous if it were always the case that a warrant is executed when it's the sole basis. And in further support of that, the revisions to the statute that have been discussed that provide for recognizance hearings within 24 hours contemplate scenarios in which bail is set on both the parole warrant and underlying charges at the same time. That only makes sense if the warrant is executed when it serves as a basis for holding parolee. And more recently, three weeks ago, the First Department held in a case, New York v. Anucci, which I only have the Westlaw site because it's not yet published, 24 Westlaw 125-9934, makes clear that the warrant is executed when it is issued and So in this case, the 15 days started to run when Mr. Udelez was detained, essentially? Correct. Well, not when he was initially detained on the 22nd when he was arrested, but when he was arraigned and the parole warrant was lodged on May 23rd. As to the widespread violations point, again, I don't think we need to go there, but to the extent we do, I think there are numerous habeas cases that show that there have been sufficiently widespread overdetentions. The cases that this court cited in McDay, which is the same exact policy that was at issue here, the cases that we cite, for example, on page 24 of our opening brief, and these are just a collection of cases. And as Your Honor pointed out, there can be obstacles to people filing for a petition for a writ of habeas corpus. So the fact that just the habeas cases themselves don't even necessarily provide the tip of the iceberg of the number of people who are potentially being over-detained. Well, if it were an inference, we'd have to show that it's enough to put the city on notice, right? So if they fly under the radar so much, the city wouldn't even know about it. We wouldn't be able to make that showing. Right. Well, our argument is that these habeas cases provide sufficient — You're saying the inference should be that there's lots of other cases. Or that there's a question of fact at this point, right? Exactly, Your Honor. But your burden is just to show a question of fact that there's a redundant state. Right. Exactly, Your Honor. The habeas cases at least provide a jury with the basis to draw that reasonable inference. Okay. Thank you very much. Thank you.